First case on the afternoon docket is 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 in the matter of the estate of George Sheridan deceased. Mr. Roth? Yes, Your Honor. You may proceed. Please quote. The appeal today is one that is a matter of right under Supreme Court Rule 303, and the issues of the law that I think I would like the court to consider. I've stated in my trial reading for appellate referendum, and one of the other attorneys in the case has had more practice in the appellate court than I, tells me that I can ask you, if you make a decision, to not make a Rule 23 decision rather than one that is open for the rest of us. Rather than case specific, and the importance of that, I've stated in my brief, and more importantly, the statute that the legislature passed that I referred to in the brief, the Illinois Uniform Premarital Agreement Act, was enacted and made effective January 1 of 1990. That Act does apply in this case since the prenuptial agreement that was in place after the effective date of this Act. There is higher law that I've recited in my tables of points of authority than ones under Category 1, and it's my belief, and I believe the rest of us attorneys in trying to appreciate and understand premarital agreements that were created after January 1 of 1990, to know whether this prior law, Sokolow, Hopkins, Dragg, and Barnes, is still controlling law in the state of Illinois, along with and side by side with the Illinois Uniform Premarital Agreement Act. I don't find anything in the Act to say that these cases are abrogated, these cases are no longer the law, and that we shouldn't look to the rules enunciated in these cases, but I've identified them in my points, number one. And I say that's important because when we look at a prenuptial agreement, a premarital agreement, the concept enunciated first in the state of Hopkins and followed up in Sokolowski, that at the time that parties become engaged, that as a result of that engagement, there arises then a confidential relationship between the parties in dealing with one another. And I think that's important to know and to keep in mind when we look at this case, when we look at the prenuptial agreement, when we look at the exhibits that describe Mr. Sheridan's, the decedent's assets and my client's assets. When we decide whether a case or a prenuptial agreement is unconscionable, this is not, this transaction, this negotiation, this agreement was not, at least to my view, one that was an arms-length transaction because of this confidential relationship that I believe arose at the time that parties became engaged. The facts that I've stated and the state of the facts in my brief indicate that the parties became engaged to be married in December of the year before the marriage. And it's my view that at that time, the confidentiality or the confidential relationship arose at that point under the cases that I've mentioned. And they then have a duty to deal with the other fully, fairly, completely without holding back anything. They are, in fact, as analogous principal and agent, things that it's in the situation of, say, a power of attorney where someone gives me a power of attorney, I have duties that are beyond the payoff that normally I'm normal. And it's my belief and argument that that relationship existed under law at the time that these two folks became engaged to be married. And that, because of that, the disclosures that they're both required to make are far and above the alliance that was given to them. Isn't that what Sokolowski says? Yes. That the confidential relationship arises when they're engaged to be married? Yes. And you're wondering whether the act says that no longer exists because it's not mentioned in there? The reason I raise that is for Judge Daniel Hartigan, the judge that last ruled in this case on two times. And it's in the record, stated on the record, that he doesn't believe that that's the law of the state of Illinois law. That's why I make it. I see. And, you know, we all don't have the record at the same time, so that's why I asked the question. But I do recognize the importance that you're raising as far as whether an opinion is necessary. But don't you find that a lot of the case law that's out there pre the act codifies a lot of the public policy in the act itself? I agree. And they added more restrictions and more definite additions to what's there in the law. And it also eliminated the requirement of marriage to consummate the contract. Yes. Right? So, I mean, the only thing that I could see that it eliminated was this requirement of marriage, that the marriage itself is considered sufficient consideration. You don't need that consideration anymore. But much of the language of the case is pre act seems to be codified into the act itself. I agree with that. But I have a judge in Jasper County that says this law doesn't apply anymore because the act is the law and the court cases that are there don't apply anymore. The second principle that's enunciated, I think it was in Hopkins, is that if there is a great disparity between the assets of the parties that are part of this contract, disproportionate was the term used, that the court can raise a presumption that there was some concealment by the person with the greater assets, the greater number of assets, presumption of concealment, and then it switches the burden, in this case, to the estate to prove that there was no concealment. And, again, that's the law that predates the act. While we're on that one point, your honor, counsel and I have disagreed from the beginning that the prenuptial act complies with section seven of the Illinois Uniform Primarial Agreement Act. I direct the court's attention to, this would be 750 ILCS, 10 slash 7, prince, small a, prince II. And that was not present in the agreement. That's my position that that language, that I specifically claim the right to disclosure anymore beyond what's already been given. Now, strict construction of the law, at least how I understand it to be, is that we have a law that says this language has to be in any agreement that the law controls and specifies to. You will find nowhere in that prenuptial agreement the language that we expressly waive the right to any more disclosure beyond what's already been provided. That language is not in the prenuptial agreement. And if we are to take the law at its face, any prenuptial agreement that does not have that language is deficient. Now, counsel and I, I'm sure we've disagreed on that point from the beginning, but I wanted to raise that point to the court. While you're in the statute, what about the issue of support? The issue of support under that same section 7, only prince, small b, allows the trial court, if in certain circumstances, to undo the provisions of prenuptial agreement where it says no maintenance, no support. In this case, no dowry, no right of widow's award, no right of anything. That subsection b of section 7 allows the trial court to ameliorate the harshness of this prenuptial agreement which says you don't get anything. It doesn't matter if we've been married 5 years, 10 years, 20 years. And these folks were married over 20 years. They married in April of 91 and he died in January of 12. And in my view, the prenuptial agreement is harsh. The circumstances are harsh. You look at his exhibit A of assets and he's got farm ground, he's got a home in the lake, he's got money in the bank. By the pale, his worth is probably $91 million. And what's hers? A house in Albany. And there was no support granted to her? No. She couldn't get past the pleading stage. Couldn't get past the pleading stage. And I am not an artist in pleadings. I never claimed to be. And I couldn't get past the pleading stage to get to the proof stage. And that's where I am today. Well, did you plead the lack of her ability to maintain herself with support? Specifically? I mean. That would be count two of my full commitment of renunciation. Or ask for spousal support. And I allege that she sold her residence in reliance. They had a lifestyle that was way beyond what her means were able to do even at that time. And that she changed her position in reliance upon the lifestyle and the way that Mr. Sheridan treated her and provided to her. And in any sense of the term, if this was a dissolution case and Mr. Sheridan would be alive, the principles would be the same. We had a lifestyle that we would not have otherwise enjoyed or had possible from my meager income and my meager assets when I married you in 1991. And your property has increased in value and you have shared it with me and we've got this home. And so, unfortunately, Mr. Sheridan did not survive. But fortunately, they had many years of great marriage. And they were able to stay married until his demise. Looking at Exhibit A, can you tell me what the 2 over 3 means next to farm and lake house? I believe that that means he owns two-thirds interest in a lake house. This would be in the chart. And the farm, both of them have two-thirds next to it. So you don't know if that – you still don't know what that means? I am assuming from my investigation that Mr. Sheridan was vested with only two-thirds interest ownership in a farm ground. It's described as being a farm ground and a house on the lake. Someone else owns the other portion. Okay. In your pleading, Count 3, you, I think, alleged fraud. I did. And is that – what I'm trying to figure out is what the actual fraudulent misrepresentation was. Are you saying that it was the agreement itself? No. I was saying in the beginning of my pleadings, obviously you can tell by reading them, that he did not include all of the assets that he owns. I learned after the fact that he owns several parcels of lots of property in the Little Bird Hall, St. Marie, which is in Jasper County. And these lots are not farm ground. And these lots are not part of the lake house. And he omitted the seal and the bank accounts he had. There's no way of knowing his disclosure of money in banks and quantities. And that's the basis of that contract. So you still don't know the answer to these questions. You just know that there are other properties or there are other accounts? I know that there is other land. And I know that because I found a deed in George Norbert Sheridan's name that before this prenuptial agreement was entered into and signed, he was the owner. What about the bank accounts? That is a more difficult question. We know that he had bank accounts. And I can't tell. And so I'm interpreting that in his Exhibit A, there is no mention that I have bank accounts in this bank and I have this much money in it. I see money market. I see certificate of deposit. I see unit trust. I see anything else but bank account, this bank, this much money, bank account, money market. I mean, in my view, his Exhibit A is so deficient. I can't know and Mary can't possibly have known what George Norbert Sheridan actually was worth and what he owned in April of 1991 when she freed him. And you won't get that until you get to discovery. Okay. Let's assume just hypothetically that there was no confidential relationship but just the entry into a contract between two people. Don't you still have a duty of good faith and fair dealing? You do and one of not to lie and conceal. And count three goes to that. And a duty of being full disclosure. And that's the whole concept of unconscionability, that it's so lopsided. Courts, in spite of the stupidity of my client, can say it's unconscionable, Mary. I am going to declare it unenforceable and void, and you can have your rights under the laws of probate act. This prenuptial agreement, I'm not going to enforce against you. And that's ultimately the relief that we're looking for. And we have to come up here for your assistance to get that. Do you have anything else? No, I don't. I'm waiting for you. Yeah, I was looking for my fellow justices. I don't have any more questions. Okay, you'll have a chance again if you can. Well, thank you. Okay. Mr. Is it pure? Thank you. May it please the court. Mr. Roth, my name is Ron Fuhrer from Seymour Austin and Fuhrer in Effingham. And I represent Janet Cartridge, the independent representative of the state, Mr. Sheridan. What this case is really about is the fact that these attempts on the part of the appellant to renounce the will of George Norbert Sheridan and set aside this prenuptial agreement failed five times in the trial court. Four different judges heard these arguments, and on five times they all found that the allegations of these petitions to renounce the will and to set aside this prenuptial agreement were all deficient. This particular prenuptial agreement was dated April 22nd, 1991. So it is governed by the Illinois prenuptial agreement, which went into effect January 1st of 1990. The agreement that they entered into provided that each would retain ownership of all the property they owned on the date of the agreement, and that each of them waived any right they would have by any reason, statutory, common law, otherwise, to share in the estate of the other. Now, they were married for some years, 20 to 21 years. Mr. Sheridan died January 26th, 2012, and thereafter these renunciations of will were filed. And I think the main issue in this case is not all the presumptions and the law that it was before the act came into effect, but did the trial court abuse its discretion by finally dismissing the fourth amended renunciation of will with prejudice on October 9th, 2013? As I said, there were five occasions, four different judges, all of them found the allegations of those petitions to renounce that will to be insufficient. Now, I've cited in my brief on pages eight and nine cases and law that I'm sure you're all familiar with, that Illinois is a fact-picking state, that motions to dismiss should be, the facts and inferences therefrom while pleaded back should be construed in the light of the plaintiff, but that legal conclusions should be ignored, legal and factual conclusions. Now, what was actually pledged in these renunciations of will, particularly the fourth amended renunciation, which was the one that was dismissed with prejudice? Count one, paragraph 8B, just says, the deceased owned more real estate than what was shown in the exhibits to the prenuptial agreement. After five attempts, not one track was identified. Now, counsel has sat here today and discussed things that do not appear in the record anywhere about Watson, St. Marie, and bank accounts, but five attempts, and they never could come up with one specific one. It's also in their pleadings that Mary Sheridan became aware of these accounts or this property after the prenuptial agreement was signed. So surely they could have said, here's a track of land that wasn't disclosed. Here is a bank account that wasn't disclosed, that existed on that day. Never did they ever do that. And the reason I think that is so important is that if this court would allow such vague allegations, conclusionary allegations, then any prenuptial agreement is subject to attack and litigation, no matter how much time has passed, because all somebody has to do is say, actually, it's not disclosed. Well, how do you get disclosure or discovery without a pleading on file? Well, that's an interesting question, and I want to address that. I was going to address it later, but under the Act, under the Act now, the issue is unconscionability. The first thing the court must do is find that the prenuptial agreement is unconscionable, and that is decided as a matter of law. It is, and one of the presumptions in the case law, if I read it correctly, is where you have great disparity of assets, there is a presumption that then shifts the burden. And, but, Your Honor, if it's decided as a matter of law, doesn't this presumption not create factual issues and it can't be resolved as a matter of law? Well, that's an interesting question, too. That's why the question is, and that's one of the things we've argued before, my opinion is that this court can decide this on the issue of whether the court abuses discretion in dismissing this after five times. I mean, sometimes it's got to stop. But I've argued all these things in the trial court, and we've argued them in briefs, and I've argued them here today because I think that the statute has changed things in some way. Because if the first step is to determine as a matter of law whether the prenuptial agreement is unconscionable, then I think it's difficult to use presumptions. Now, if the court, as I read the statute, if the court finds it's unconscionable, then they are going to look to issues where it's still going to be enforced if there has been disclosure, a waiver of disclosure, or that the person attacking it has had some opportunity to familiarize themselves with the assets and obligations of the other party by some other means. That's all in the statute. But if you follow your argument, correct me if I'm wrong, someone files a pleading and the court, without anything more, is not going to look at the pleading but only the agreement to decide if it's unconscionable. How does that work? How does that work in our system? That's how the statute reads. I mean, I'm asking if there isn't any law. There isn't a court to be guided by the pleading on file. Sure. And so what your argument is, we don't even look at the pleading first. We have to look at the agreement and see if, as a matter of law, the agreement is unconscionable, and yet there's no criteria for that. I agree. The statute does not set forth any criteria for deciding whether it's unconscionable or not. So that leaves us back with the pleading. And, again, these pleadings were also. The pleading says there were bank accounts that weren't disclosed, there's a great disparity of assets, the description of the farm at 386 acres did not specifically identify the land, and the act wasn't followed because there wasn't a complete waiver. What more can you plead at that stage?  Well, in regards to the land and the descriptions, that is a complaint, not so much of their lack of disclosure, but the method. And the act does not say anything about the method. It doesn't say that you have to use any legal description. That was the primary complaint. And the complaint, I agree, a complaint can be a leading factor that the court looks at, but the complaint has to have some type of factual allegations. And not having sufficient bank accounts or not following. What bank account, though? That's what I'm suggesting. And what I'm suggesting, Justice, is if we allow that to go, then isn't there a risk that all anybody has to do is say there wasn't a bank account and now we are in extended litigation over the issue without them first having to say, okay, here's a bank account. How does someone get that without a subpoena or discovery? How do you suggest a solution to your argument? You would think that a person that was married for 20 years who says in the pleadings that he has these and I became aware of them ought to be able to say at least one. That's just your supposition. But I noticed that she did file a verified complaint. So the penalty for filing a frivolous pleading, so there are plenty of those out there. So you just don't make up things that go into a pleading. She says there's bank accounts. We know that the statute isn't, at least the plain language of the statute, isn't in the agreement. So we see that, that there was no waiver. This waiver language is not in that agreement. That's pled under the unconscionability. Would you like me to address the waiver aspect? Well, I'd like you to address how we solve what you're arguing without discovery. I see it similar to, I think you have to look at it from both sides. I see it similar to if this was an auto accident in a negligent case, I cannot just say the defendant was driving in a negligent and careless manner. The law requires me to set forth some type of factual basis that they were driving at an excessive speed, that they were ignoring the speed limit. I agree with you, but you don't have to say what speed. No. You just have to say there was an excessive speed or a speed greater than was reasonable. Here they say bank accounts or a farm ground, but they don't have to say which bank accounts, do they? Even under your example, you don't have to say which mile per hour they were riding at. No, I agree, but if we don't put some limit, don't you think that anybody who wants to challenge one can say, just make some blanket statement that there were assets not disclosed, whether they were personal, whether they were real. I agree with you. And then we have to enter into 20 years worth of discovery to find out whether there was such a thing? No, I think you're right. If you just say there were assets not disclosed, but I'm reading here that there were bank accounts, there were insufficient description of the land, there was omissions as to ownership. So those are a little different than just saying there were assets. Or maybe they're not, in your opinion. I don't know. I think at this point, I think after the five attempts, when every trial judge has found that these allegations are insufficient, that they've said you need to plead more facts, and I have argued every time in the trial court that they need to tell us the truth. There should have been some evidence to show there was fraud or duress. Well, that's pound three. It wasn't there four times. And what I'm saying is after all these attempts, maybe on the second attempt that they had said, you know, here's the bank account or here's the land, but after these five attempts, I think it's in the court's discretion to say this is dismissed and it's dismissed with prejudice. Or have evidence of fraud, duress, or lack of knowledge. Thank you. Written someplace. But the court doesn't say why it dismissed it. It doesn't say factually. It doesn't give us any explanation of why it was dismissed. I think in every opinion of the judges, at some point they have said the factual allegations are insufficient. And I think that Judge Hartigan, on the third amended renunciation, made a finding that the disclosures he found were reasonable. On the fourth one, he said, I don't find these allegations sufficient to set aside the prenuptial agreement. And it was basically, counsel, you've had several attempts to do this. And I am exercising my discretion to dismiss with prejudice. Okay. So that would be counts one and three. What about count two where a court has discretion? Count two. The act in paragraph 4A4 provides for the modification or elimination of support. 4A? Yes. Section 4, paragraph A4. It provides- I see that. I had it here, hopefully I haven't misstudied it. I see it. Modification or elimination. Right. It provides for modification or elimination of support in a prenuptial agreement. Now, section 7B will allow the court to modify that if unforeseeable circumstances have occurred since the prenuptial agreement was signed. Okay. And so what has to be- My point is that, number one, this is not a divorce case. We are not dealing with the issue of support as you would in a divorce case. I don't believe there is any legal obligation of a deceased person to support their spouse. Now, counsel will say- I'm sorry. We're talking about the pleading, not whether there is how it's going to come out. But what more would you have wanted to see in the pleading in order to raise the issue and give the court the opportunity to look at the facts? Well, first of all, I don't think this is applicable in a probate situation because we are not dealing with support in regards as we would with a divorce. Secondly, even if you disagree with it and they want to avail themselves of the powers the court provides by paragraph 7B, they have to show some circumstances that have occurred that were not foreseeable at the time of the prenuptial agreement. And if you look at the allegations, there are none. She says her lifestyle has changed. She had a house and was on Social Security at the time of the prenuptial agreement, according to the exhibits. And I believe the allegations of that particular house say that she sold her house. So she still has the money, you would think, or should have, from that house. One of the cases, the DRAD case that has been signed, kind of addresses that issue and says a mere change in financial circumstances is not enough to evoke that type of relief, even though DRAD, it was not decided under the Act. It was decided in a kind of a common law rule that was similar to that or a provision of that particular agreement. So my position is they didn't allege any unforeseeable circumstances. I think that provision is more as if one spouse has become subject to a serious injury or illness or disabled and could no longer support themselves as they did immediately prior to the prenuptial agreement. I believe that I have addressed many of the things I wish to argue here. The count three, which was the fraud count, again, those are just mere conclusions. He didn't disclose some real estate he had, which is unnamed real estate. We don't know. Therefore, it's fraud. As I point out in the brief, they haven't even alleged the elements of fraud that would be required in such a case, and that is that the representations were false and they were a material fact. The defendant knew the statement was false. The defendant's intent at the time the statement was made was to induce the plaintiff to act, the plaintiff's reliance on the truth of the statement, and the plaintiff's damages. Those aren't even alleged. The fraud allegations are mere conclusions as well. Do you think that a pleading of fraud in this case has to arise at the level of the Twombly and Iqbo cases as any other fraud allegations? If they are alleging fraud, I wouldn't see why not. But again, they've had five opportunities. At some point, you can't just keep dismissing it forever. And I think if you look at the transcript, there was discussions of this time and again about the factual allegations need to be expanded upon, etc., etc. And I believe it would be a dangerous precedent just to allow somebody to make some blanket statement when they also say supposedly this knowledge is in their possession and never come up, and we always have to challenge it. I think the act was intended, I don't know this, but in my opinion, it was intended to make these a little more enforceable. But I don't know. Does Judge Hartigan, as was represented, believe that the act has changed the prior existing case law? Was the basis of his decision that fact? I think I'm going to pair. If you would like, I could find the actual spot where he said what he said. But I think it was, I've heard your arguments about confidential relationships or fiduciary relationships, and I'm not sure they apply to a prenuptial agreement. Or I don't think they apply to a prenuptial agreement. That was not the time when he dismissed this prejudice. But on that day, he also found that the allegations of that, at that time, third amendment renunciation were insufficient to set aside the premarital agreement. And yes, I think he said, I've listened to your argument about creating a fiduciary relationship as to the parties being engaged. And I don't know. I find that doesn't apply to prenuptial agreement. So he is saying that he disavows the announcement so belongs. That's what he said, I guess. Thank you. All right. Thank you. Mr. Roth, do you have anything else you want to tell us? If you have other questions, otherwise, I don't have any other remarks or points I'd like to make. Well, thank you, then. Thank you. Appreciate it.